IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>DESHAWN LEWIS,<br>    Defendant. | Case No. 2:13-cr-20016-JEH |

**Order**

Now before the Court is Defendant, Deshawn Lewis's ("Lewis"), motion for early termination of supervised release. (D. 54). For the reasons stated, *infra*, the motion is GRANTED.[1]

**I**

Over a decade ago, the Court sentenced Lewis to 157 months in prison and to the statutory mandatory minimum term of eight years' supervised release (21 U.S.C. § 841(b)(1)(B)) for the offense of distribution of twenty-eight grams or more of crack cocaine. After being released from prison, and now approximately thirty months into his originally imposed supervision term, he seeks to terminate his supervision early.

In support of Lewis's motion, he posits: 1) that he has demonstrated exemplary conduct during his incarceration by completing both the residential and non-residential substance abuse programs; 2) that he maintained clear conduct through his prison term under difficult circumstances; and 3) that his time in custody was challenging due to the COVID-19 outbreak, which limited self-

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

improvement opportunities, yet he remained compliant and gainfully employed shortly after release.

Regarding Lewis's conduct while on supervised release, he posits: 1) he has completed approximately thirty months of supervised release without any violations; 2) he has maintained gainful employment, stable housing, and has never failed a drug test during his supervised release; 3) he obtained valuable certifications, including a Commercial Driver's License and Hazardous Materials Certification, and works as a truck driver; 4) he lives with his girlfriend and assists in parenting her daughter, while maintaining contact with his son in Texas; 5) he submits paystubs weekly, undergoes random drug testing, and receives occasional home visits, all without incident; 6) his supervising officer confirmed his exemplary conduct, noting his compliance and self-management capabilities; 7) he has progressed in his career, earning a six-figure salary as a truck driver for UPS, and 8) he has been a positive influence in his community and family life.

In light of these facts, Lewis argues that he meets the standard for early termination of supervised release as set forth at 18 U.S.C. § 3583(e)(1).

The government's response in opposition to Lewis's motion does not contest any of the facts posited by Lewis. Instead, the government argues this Court should deny his motion because: 1) of Lewis's prior criminal history and performance on supervision in other cases; 2) full compliance with supervised release conditions is not enough to warrant early termination because a defendant must establish "new or unforeseen circumstances to warrant it," (D. 55 at ECF p. 4); and 3) the fact that he has done well on supervision demonstrates that he needs that supervision.

## II

### A

Title 18 of the United States Code, Section 3583(e) governs a court's early termination of supervised release. Sub-section (1) allows a court to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release." 18 U.S.C. § 3583(e)(1); *see also United States v. Crisp*, ___ F. Supp. 3d ___, No. 2:13-CR-20050-JEH-1, 2025 WL 819126, at *3 (C.D. Ill. Mar. 14, 2025). This one-year requirement is the *only* statutory threshold requirement a defendant must meet. *See Crisp*, at *3 (noting "attempts by courts to erect other arbitrary time barriers to considering motions for early termination have been rejected"); *United States v. Lowe*, 632 F.3d 996, 998-99 (7th Cir. 2011) (rejecting a court's requirement that a defendant meet an arbitrary, judge-made threshold requirement before it would even consider an early termination motion).

If a defendant meets this one--and only one--statutory threshold requirement, then a court must consider his early termination motion and weigh the § 3553(a) factors listed in § 3583(e), to wit: § 3553(a) sub-sections "(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a) (5), (a)(6), and (a)(7) . . .." 18 U.S.C. § 3583(e).

### B

No one disputes that Lewis meets this threshold requirement for seeking an early termination of supervision, but the government argues that Lewis's perfect conduct in prison and on supervision cannot be enough to warrant early termination of supervised release. (D. 55 at ECF pp. 3-4). However, recently, this Court very soundly rejected such a requirement in *United States v. Crisp*, No. 2:13-CR-20050-JEH-1, 2025 WL 819126, at *3 (C.D. Ill. Mar. 14, 2025). Specifically, the government argues that something more than perfect compliance is required before supervision can be terminated early, that "something" being new or

3

unforeseen circumstances. In making this argument, the government cites to *United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997), and *United States v. Branscumb*, No. 1:09-CR-10023-MMM-JEH, 2019 WL 6501208, at *3 (C.D. Ill. Nov. 12, 2019), *report and recommendation adopted,* No. 09-10023, 2019 WL 6499067 (C.D. Ill. Dec. 3, 2019).

> As this Court explained at length in *Crisp:*
>
> [S]ome Courts, including this one in the past, have required as a threshold requirement for early termination that a defendant have had absolutely no violations of supervised release of any kind during their entire time on supervision. *United States v. Branscumb*, No. 1:09-CR-10023-MMM-JEH, 2019 WL 6501208, at *3 (C.D. Ill. Nov. 12, 2019), *report and recommendation adopted*, No. 09-10023, 2019 WL 6499067 (C.D. Ill. Dec. 3, 2019). Indeed, some courts have gone so far as to state that having a perfect record on supervision is not enough to warrant early termination, stating that a defendant also should "demonstrate exceptionally good behavior or unforeseen circumstances warranting the early termination." *Id*. (citing *United States v. Kay*, 283 F. App'x 944, 946–47 (3d Cir. 2008)); *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997); *Folks v. United States*, 733 F. Supp. 2d 649, 651–52 (M.D.N.C. 2010); *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005); *United States v. Caruso*, 241 F. Supp. 2d 466, 468–69 (D.N.J. 2003); *United States v. Medina*, 17 F. Supp. 2d 245, 246–47 (S.D.N.Y. 1998). Not only are these judge-made requirements beyond what § 3583(e) provides, but they are also of suspect origin. []
>
> The line of cases requiring this "perfect conduct plus" standard for early termination trace their origin to a 1997 case out of the Second Circuit, *United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997). However, *Lussier* had nothing to do with early termination of supervised release, but instead, addressed "whether one component of a sentence—restitution—that was not challenged either on direct review or under 28 U.S.C. § 2255, may nonetheless be modified because restitution was made a condition of supervised release and supervised release may be modified pursuant to 18 U.S.C. § 3583(e)(2)." *Id*. at 33. This issue is a far cry from the proposition for which this case is cited in cases like *Branscumb*. Moreover, the statement in *Lussier* to the effect that § 3583(e) provides courts with

4

>   authority to alter supervised release terms "in order to account for new or unforeseen circumstances" was created out of whole cloth, without citation to any authority. Finally, the Second Circuit itself subsequently clarified this language in *Lussier*, stating that *Lussier* "does not require new or changed circumstances relating to the defendant in order to modify conditions of release, but simply recognizes that changed circumstances may in some instances justify a modification." *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016).

*Crisp*, at *10-11. This Court now states *again* that a defendant need not demonstrate more than perfect, or even just perfect, conduct while on supervision; what he must demonstrate is that he has met the *statutory* factors for an early termination as set for in § 3583(e). *See Crisp*, at *10-11; 18 U.S.C. § 3583(e). The government may not agree with the Court's rejection of *Lussier* and its progeny, but it is surprising it cites *Lussier* and *Branscumb* without even acknowledging this Court's analysis in *Crisp*, especially since it was the U.S. Attorney's office in this District which opposed the motion in *Crisp* just like it now opposes Lewis's motion.

**B**

Turning to the § 3553(a) factors listed in § 3583(e), Lewis argues that the undisputed facts here, similar to the facts in *Crisp,* all demonstrate that the sentencing goals of § 3553(a) have been met and, therefore, there is no further need for supervision. Although the government does not couch its opposition to the motion in terms specifically tied to § 3553(a) factors, its singular emphasis on Lewis's criminal record and prior performance on forms of supervision most relate to § 3553(a)(1)(nature and circumstances of the offense and the history and characteristics of the defendant), § 3553(a)(2)(B)(deterrence), and § 3553(a)(2)(C)(protecting the public).[2]

---

[2] If the government cites to Lewis's criminal history and supervision performance in the past for purposes of § 3553(a)(2)(A), as in *Crisp* and for the same reasons as stated in that opinion, this Court declines to

> Regarding sub-section (a)(1) and (a)(2)(B), as this Court stated in *Crisp*:
>
>> [I]n the context of . . . termination of supervision, … the primary goal is rehabilitation (which also protects the public) [and] the combined factors of "nature and circumstances of the offense" and the "history and characteristics of the defendant" should be considered together in such a way as to inform how these factors impact the goals of supervised release.

*Crisp*, at *7.

Looking at Lewis's criminal history, the government poses this question, "[W]hat has been different this time?" (D. 55 at ECF p. 4). It then poses this answer to its question: "One answer is the defendant has had the benefit of federal supervised release, including conditions and a United States Probation Office that has helped him succeed. It would seem counter-intuitive to so soon end a term of supervised release that has helped a defendant succeed, who was unable to do so previously." *Id.*

As one might expect by now, this Court also addressed this argument in *Crisp* as follows:

> Of course, the threat of re-imprisonment for violations, even minor or technical ones, can serve an important deterrent role for those on supervision, helping to incentivize rehabilitation. But the prospect of getting out from under the thumb of the criminal justice system early after demonstrating rehabilitation can also incentivize supervisees, as Crisp argues here. In other words, knowing that he could potentially reduce a multi-year supervision term by keeping his nose clean for at least a year can deter a supervisee from committing violations. By staying out of trouble in those initial, most difficult months after [re]lease, even if motivated only by both avoiding prison and reducing the supervised release term, a supervisee may begin to see the benefits of law-abiding life, promoting long-term, permanent

---

exercise its discretion to consider the factors set forth in § 3553(a)(2)(A), as that sub-section is explicitly excluded from the list of § 3553(a) factors a court must consider when deciding whether to terminate supervision early and, at most, a court *may*, but is not *required* to, consider this factor. *Crisp*, at *4-7.

> rehabilitation. Therefore, terminating the supervision early of someone like Mr. Crisp deters others from violating conditions of supervision by providing them with an additional incentive to turn over a new leaf.

*Crisp*, at *9. The Court also stated:

> Crisp has already demonstrated his rehabilitation. The only effect supervised release has on Crisp at this point is the requirement he file an electronic monthly report. This requirement is not deterring him from returning to a life a crime; clearly, the benefits of living a healthy, stable, crime free life are doing the deterrence here.

*Crisp,* at *8.

In other words, a *better* answer to the government's question, "what is different this time," is that the purposes of sentencing as set forth in § 3553(a) were actually *achieved* in this case; Lewis has been rehabilitated, as demonstrated by all uncontested facts he submits to the Court in support of the early termination of his supervision. Having been rehabilitated, there is no further need for supervised release to protect the public. *See* 18 U.S.C. § 3553(a)(2)(C).

In ways almost identical to those in *Crisp*, all the uncontested facts in this case when evaluated through the § 3553(a) factors which a Court must consider when terminating supervised release early weigh in favor of early termination. One only needs to read the *Crisp* decision to understand how — something the Court suggests the government do in the future before responding to motions to terminate supervision early.

### III

The Court concludes this Order in the same way it concluded the Order in *Crisp*:

7

> [Deshawn Lewis] is a success story, not only for himself but for the federal criminal justice system and society as a whole. At the . . . [time of his sentencing], his personal history provided dim hope that he would be rehabilitated and no longer present a danger to the public. For reasons ultimately known only to [Lewis], his time in prison on this occasion was different. He took advantage of every opportunity provided to him while in the Bureau of Prisons and, upon release, by the U.S. Probation Office. The purposes of sentencing as set forth in § 3553(a) were actually achieved in this case. Those § 3553(a) factors relevant to whether supervised release should be terminated early all weigh in favor of termination; the rehabilitative goals of supervised release have been achieved in Mr. [Lewis]'s case.

*Crisp*, at *11. Accordingly, the motion to terminate supervised release early is GRANTED.

*It is so ordered.*

Entered on April 1, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE